

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT 2 5 2016

CLERK, U.S. DISTRICT COURT
by _____
Deputy

| | | |
|---|---|---|
| JEFFREY LEE LITTLEPAGE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:15-CV-188-A |
| | § | |
| LORIE DAVIS, Director,[1] | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION
## and
## ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Jeffrey Lee Littlepage, a state prisoner incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, Director of TDCJ, Respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I. Procedural History

In 2008 petitioner was indicted in Tarrant County, Texas,

---

[1]Effective May 4, 2016, Lorie Davis replaced William Stephens as director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Pursuant to Federal Rule of Civil Procedure 25(d), Davis is automatically substituted as the party of record.

Case Nos. 1107352D and 1107358D, on multiple counts of aggravated sexual assault of a child under 14 years of age and indecency with a child. (Clerk's R.-01 at 2; Clerk's R.-02 at 2.[2]) Each indictment also included a repeat-offender notice, alleging a prior 1996 felony conviction. On February 7, 2009, a jury found petitioner guilty on three counts of aggravated sexual assault of a child under 14 years of age in Case No. 1107358D and two counts of indecency with a child in Case No. 1107358D. (Clerk's R.-01 at 109-11; Clerk's R.-02 at 102-03.) On June 1, 2009, petitioner pleaded true to the repeat-offender notice and the trial court assessed his punishment at 60 years' confinement on each count of aggravated sexual assault of a child and twenty years' confinement on each count of indecency with a child. (Clerk's R.-01 at 122-33; Clerk's R.-02 at 117-24.) All sentences are running concurrently. The Second District Court of Appeals affirmed the trial court's judgments for aggravated sexual assault and affirmed as modified the trial court's judgments for indecency with a child and the Texas Court of Criminal Appeals refused petitioner's petitions for discretionary review. (Mem. Op. at 2, 13; Docket Sheets.) Petitioner also filed two state post-

---

[2]"Clerk's R.-01" refers to the clerk's record in trial court cause no. 1107352D; "Clerk's R.-02" refers to the clerk's record in trial court cause no. 1107358D.

conviction habeas applications, one for each case, challenging his convictions, which were denied without written order. (SHR-01 at cover; SHR-02 at cover.[3])

The state appellate court summarized the background facts of the case as follows:

> The two complainants, J.S. and S.S., are sisters and are Appellant's nieces. When they were nine and eight years old, respectively, they visited Appellant and his wife at Appellant's home in Tarrant County on Christmas 2007. The girls made an outcry to an aunt, Dalena W., in January 2008 and in turn to the paternal aunt with whom they lived, Stephanie S., regarding Appellant's conduct. Stephanie took the girls to Cook Children's Medical Center, where they spoke with a sexual assault nurse, Crystal Utley, and underwent sexual assault examinations. The results of the examinations were normal.

(Mem. Op. at 2.)

The defensive theory at trial was that there were so many people, twenty to twenty-five, in petitioner's home during the holiday that there would have been no opportunity for petitioner to sexually assault the girls as they alleged. In rebuttal, the trial court permitted Shawntia M., petitioner's sister, who was incarcerated and requested to be bench-warranted back to Tarrant County for the trial, to testify that when she was nine or ten,

---

[3] "SHR-01" refers to the record in petitioner's state habeas application No. WR-82,880-01 and "SHR-02 refers to the record in his state habeas application No. WR-82,880-02.

petitioner started molesting her and another sister, that he would molest the two in front of each other, that there would be other family members in the house or in the room when it occurred, and that it happened more times than she could count. (Reporter's R., vol. 4. at 24-29.)

## II. Issues

Generally, petitioner claims he received ineffective assistance of trial and/or appellate counsel because counsel failed to-

(1)   object to the "trial court's decision to allow no evidence at the Rule 613 hearing";

(2)   fully investigate the facts of the case and prepare an appropriate defense;

(3)   prepare proper pretrial and post-trial motions; and

(4)   present witnesses in his defense.

(Pet. at 6-7.)                                                           1

## III. Rule 5 Statement

Respondent believes that petitioner has sufficiently exhausted his state court remedies as to the grounds raised, except for his third ground, in part, and that the petition is not untimely under the federal statute of limitations or a successive petition. (Resp't's Answer at 6-7; Resp't's Supp.

Answer at 4-5.) 28 U.S.C. § 2244(b), (d).

Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state on direct appeal or in state post-conviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). The exhaustion requirement is "not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition." *Reed v. Stephens,* 739 F.3d 753, 780 (5th Cir. 2014) (quoting *Anderson v. Johnson,* 338 F.3d 382, 386 (5th Cir. 2003)).

In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals. *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985). Therefore, a Texas prisoner may typically satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state habeas post-conviction proceeding. TEX. CODE CRIM. PROC. ANN. art. 11.07 (West 2015); *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Under his third ground, petitioner claims, in part, that trial counsel was ineffective by failing to file a motion to "set-aside/quash the indictments based on jurisdictions grounds." (Pet. at 7.) A review of petitioner's state habeas applications reveals that he raised a general claim under ground three that counsel was ineffective by failing to file pretrial and post-trial motions. (SHR-01 at 9; SHR-02 at 9.) However, in his supporting memoranda, he specifically alleges (all spelling and grammatical errors are in the original):

> A motion to set aside, dismiss, or quash an indictment should be made at the first opportunity and must be presented to the trial court prior to that party's announcement of ready. An oral motion to quash preserves nothing for review. Objections must be in writing and must be made before the date on which trial commends.

> An applicant charging trial counsel with a failure to file proper pretrial motions must name the motion and what affect that motion would have had on the outcome of the proceedings.

(SHR-01 at 22; SHR-02 at 22 (citations omitted).) Further, the state habeas court adopted findings on the issue. This court finds that based on this record, petitioner sufficiently exhausted the claim.

## IV. Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and

Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the

Act, a writ of habeas corpus should be granted only if a state

court arrives at a decision that is contrary to or an

unreasonable application of clearly established Supreme Court

precedent or that is based on an unreasonable determination of

the facts in light of the record before the state court.

*Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. §

2254(d)(1)-(2). This standard is difficult to meet and "stops

short of imposing a complete bar on federal court relitigation of

claims already rejected in state proceedings." *Harrington,* 562

U.S. at 102.

Additionally, the statute requires that federal courts give

great deference to a state court's factual findings. *Hill v.

Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1)

provides that a determination of a factual issue made by a state

court shall be presumed to be correct. The petitioner has the

burden of rebutting the presumption of correctness by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v.

Cockrell,* 537 U.S. 322, 340 (2003); *Williams v. Taylor,* 529 U.S.

362, 399 (2000). This presumption applies to both express and

implied findings of fact. *Valdez v. Cockrell,* 274 F.3d 941, 948

(5th Cir. 2001). Thus, absent express findings, a federal court

may imply fact findings consistent with the state court's

disposition. *Townsend v. Sain,* 372 U.S. 293, 314 (1963);

*Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan*

*v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002). Further, when

the Texas Court of Criminal Appeals denies a federal claim in a

state habeas corpus application without written opinion, a

federal court may presume "that the state court adjudicated the

claim on the merits in the absence of any indication or state-law

procedural principles to the contrary" and applied the correct

"clearly established federal law, as determined by the Supreme

Court of the United States" unless there is evidence that an

incorrect standard was applied, in making its decision.[4] *Johnson*

---

[4]Petitioner argues there should be no presumption of correctness or
deference given to the state court's findings because the state habeas judge,
who conducted only a paper hearing via affidavits, was not the same judge who
presided at his trial. (Pet'r's Reply at 3-4.) Contrary to his assertion,
however, a state court's factual determinations are entitled to a presumption
of correctness under § 2254(e)(1), regardless of whether the state habeas
court held a live evidentiary hearing, versus a paper hearing, or whether the
state habeas judge was the same judge who presided at trial. *See Morrow v.
Dretke,* 367 F.3d 309, 315 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941,
951 (5th Cir. 2001); *Carter v. Johnson,* 131 F.3d 452, 460 n.13 (5th Cir.1997);
*Hudson v. Quarterman,* 273 Fed. App'x 331, 2008 WL 1708998, at * (5th Cir.
2008); *Bass v. Dretke,* 82 Fed. App'x 351, 2003 WL 22697282, at 3 (5th Cir.
2003). The AEDPA's deferential scheme is mandatory and applies to all claims
adjudicated on the merits in state court. *Valdez,* 274 F.3d at 950. Thus, while
the Texas Court of Criminal Appeals did not adopt the state habeas court's
findings of fact and conclusions of law as its own, arguably the factual
findings made by the state trial court are presumed correct and are only
subject to being rebutted with clear and convincing evidence. 28 U.S.C. §
2254(e)(1). Nevertheless, even if this court did not presume the correctness
of the state habeas court's findings, the Texas Court of Criminal Appeals
presumably applied correct standards of federal law and made findings
consistent with its decision. The Supreme Court has established that a state
court's failure to make explicit findings of fact does not affect the
deference a court must accord the state court's determination. *See Harrington,*

v. *Williams,* — U.S. —, 133 S. Ct. 1088, 1094 (2013); *Harrington,*
562 U.S. at 99; *Schaetzle v. Cockrell,* 343 F.3d 440, 444 (5th
Cir. 2004). With these principles in mind, the court addresses
petitioner's claims.

### (1) Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to the
effective assistance of counsel at trial and on the first appeal
as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S.
387, 396 (1985); *Strickland v. Washington,* 466 U.S. 668, 688
(1984). *See also Smith v. Robbins,* 528 U.S. 259, 287-88 (2000)
(applying *Strickland* standard to ineffective assistance claims
against appellate counsel). To establish ineffective assistance
of counsel, a petitioner must show (1) that counsel's performance
fell below an objective standard of reasonableness, and (2) that
but for counsel's deficient performance the result of the
proceeding would have been different. *Strickland,* 466 U.S. at
688. Both prongs of the *Strickland* test must be met to
demonstrate ineffective assistance. *Id.* at 687, 697. In applying
this test, a court must indulge a strong presumption that

---

562 U.S. at 9 ("[D]etermining whether a state court's decision resulted from
an unreasonable legal or factual conclusion does not require that there be an
opinion from the state court explaining the state court's reasoning."
(citations omitted)). See also *Amos v. Thornton,* 646 F.3d 199, 205 (5th Cir.
2011) (per curium) (finding that deference to the state court is not
diminished when the state court "did not explain the reasons for its
determination").

counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

The Supreme Court recently clarified in *Harrington v. Richter* the manner in which a federal court is to consider an ineffective assistance of counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Accordingly, it is necessary only to determine whether the state courts' rejection of petitioner's ineffective assistance claims was contrary to or an objectively unreasonable application of *Strickland*. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke*, 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).

In his state habeas applications, petitioner claimed his trial counsel, Curtis L. Fortinberry and Roxanne Robinson, were ineffective by failing to—

(1)  object to the trial court's decision to disallow evidence at the Rule 613 hearing that S.S. made a prior allegation of sexual abuse against a friend of the family;

(2)  fully investigate the facts of the case by interviewing Shawntia M. before trial and prepare an appropriate defense;

(3)  file proper pretrial and post-trial motions—*i.e.*, a motion to set aside or quash the indictments and a "Motion for the Court to Direct the Court Reporter to Record Proceedings" to ensure an accurate record of the entire trial, including the "juror strike list" and the seated jurors' names; and

(4)  present additional witnesses corroborating that upwards of twenty-five people were in the house during the holiday.

(SHR-01 at 7-10.) Petitioner also claimed that his appellate counsel, Dean M. Swanda, was ineffective by failing to file proper post-trial motions, including a "Designation of Record" that included a request for the "juror strike list" and the names of the seated jurors (SHR-01 at 30.)

Trial counsel Fortinberry responded to petitioner's allegations, in relevant part, as follows (all spelling, punctuation and/or grammatical errors are in the original):

11

Response to Ground One:

In an effort to impeach SS under TRE 613, SS was
questioned regarding a prior inconsistent statement to
Alliance for Children. SS answered "yes". Therefore
under TRE 613 "if the witness unequivocally admits
having made such statement, extrinsic evidence of same
shall not be admitted". Although the State objected
when asked a second time (for clarification purposes)
is irrelevant as SS admitted the statement. As such it
precludes using intrinsic evidence for empeachment
purposes.

Response to Ground Two:

Applicant and his wife were asked to list every
person who had been in the house for a 72 hour period
surrounding the offense time. Every person on that list
was discussed with both Applicant and his wife, Rose.
Of the 20-25 people who were at the house, most were
never there at the same time and it was over the course
of several days. Applicant and his wife, Rose, were
very active in the trial preparation process. We spoke
on many occasions and at great length regarding trial
strategy and who should be called as a witness. It was
determined by counsel, with the consent of Applicant
and his wife, Rose, that other than those called to
testify, the others would not provide relevant
testimony. Specifically, as Shawntia M. was not at the
house during the time frame, her testimony would not
have been relevant. Additionally, [Shawntia M.] was
vigorously cross examined by defense counsel.

Response to Ground Three:

As the Court is well aware, all trial proceedings
are properly recorded by the Court's recorder. This is
a standard practice in Tarrant County. The fact that
this is proper procedure and that the Court Reporter
did record the entirely of the trial makes this Ground
for Relief irrelevant.

Response to Ground Four:

This is just a reworded Ground Two, I would refer the Court to my response to Ground Two.

. . .

Response to Ground Six

It appears that Applicant is asking for a complete list of the jurors names. That information was returned to the bailiff upon the completion of voir dire as is required by the Court. There were no challenges for cause as there were no venirepersons who would unequivocally state that they could not make a fair and impartial juror.

Applicants case was throughly investigated by my office. All relevant parties were interviewed and were either called as witnesses or rejected based on whether or not their testimony would be relevant to Applicant's case. I made all proper objections when necessary. I can not think of one thing that I would do differently if I had to do it over again.

(SHR-01 at 127-28.)

Trial counsel Robinson, who was asked to assist in the trial by Fortinberry, responded, in relevant part, as follows (all spelling, punctuation and/or grammatical errors are in the original):

3. I do remember thinking that Mr. Fortinberry had an excellent grasp of the facts, potential witnesses and relevant legal issues when he first briefed me on these cases. All the pretrial work on these cases had been done as far as I could see. My job was to help Mr. Fortinberry during jury trial so he could handle his case as smoothly as possible. He also thought it best

13

to have a female attorney cross examine the female child "victims" rather than do it himself. Applicant had no objection to my participating in the trial when I was introduced to him.

**4. Ground for Relief Number One** attacks trial counsel's failure to object to the trial court's decision to not allow testimony after a hearing on Rule 613 and failure to make an offer of proof. One of the alleged victims in these cases had accused another man of sexually assaulting her some months prior to the allegations in these cases. The Haltom Police Department detective working that case, interviewed the man accused. Based on this interview and the lack of cooperation by alleged victim's family, the detective closed the case as unfounded. Applicant believed this was proof that this alleged victim was a liar.

At trial, we tried to get this information before the jury. Prior to the hearing outside the presence of the jury, both the defense and the state provided case law to the court reference this issue. After reviewing the case law, the court expressed it's opinion that "specific instances of conduct involving the victim would not be admissible, unless there's a showing specifically that it was under similar circumstances as the current case, as well as that there was a finding that those allegations were false." The court then asked for an oral proffer which Mr. Fortinberry then gave. The relevant offense report was admitted as Defendant's Exhibit No. 1 for purposes of the record.

After attempting to get this evidence before the jury under Rules 412, 608(b), and 613, we offered it for impeachment purposes. After all arguments, the court sustained the state's objection to our proffered testimony. This was an adverse ruling to our position. The state's objection had been sustained. Applicant complains that we did not object to the court's ruling on the state's objection. We didn't need to. Years ago, we would have asked the court to note our exception to the court's ruling, but that practice is no longer

necessary.

   **5. Ground of Relief Number Two** attacks trial
counsel and complains about counsel's alleged failure
to fully investigate the facts and failure to prepare
an appropriate defense. Mr. Fortinberry had fully
investigated the facts of these cases and had developed
an appropriate defense, in my opinion. I came into the
case just days before trial and therefor was not in a
position to conduct much investigation. All the
questions I put to Mr. Fortinberry about the facts of
these cases, were answered fully by him. Also, the
witnesses told me what Fortinberry said they would.
These things indicated to me he had completed a full
investigation.

   There had been difficulty in talking to a rebuttal
witness, Shawntia M., due to her being incarcerated by
the Texas Department of Criminal Justice and had been
participating in the substance abuse program (SAFPF)
for two and one-half months prior to the trial of these
cases. I cannot remember exactly when this rebuttal
witness arrived at the Tarrant County jail by bench
warrant. My memory is that she arrived very shortly
before she was called by the state to testify. I think
she arrived the night before she was to testify. I did
tell the court we had not had the opportunity to visit
with this witness (due to her incarceration) and that
we "don't know what she is going to say". We had a
pretty good idea what this witnesses testimony would be
based on our conversations with the other family
members and the state's extraneous offense notice. We
did not know exactly what she intended to testify to
during tis trial or how she would answer the questions
we wanted to ask her. It is well known that an attorney
doesn't want to ask a question when he doesn't already
know the answer. We knew the jest of her testimony and
that it wouldn't be beneficial to our case.

   As to the admissibility of the testimony of this
rebuttal witness, Shawntia M., I believed that under
relevant case law, it was admissible. Mr. Fortinberry
had not been able to find any case law helpful to us.

Nor could I in the short time I worked on these cases.
We told Applicant that we would likely not be able to
keep her off the stand. I had discussed with him the
potential of opening the door for this type of
testimony. Applicant insisted we pursue the defensive
theory that "there were too many people in the house
for him to have committed the offense". (It seemed he
felt it had worked for him in the past and was
convinced it would work for him again.) We had little
else to work with, as I recall.

   6. **Ground of Relief Number Three** attacks trial
counsel's alleged failure to file proper pretrial and
post-trial motions and appellate counsel's failure to
file proper post-trial motions. It seemed to me all
appropriate motions had been filed in these cases. Mr.
Fortinberry had acquired all necessary information,
reports and statements, and had full access to the
state's file. Because I was brought into this case for
the sole purpose of sitting second chair during trial
and had no involvement with the filing of any motions
in these cases, I will not respond unless asked to by
the court.

   7. **Ground for Relief Number Four** attacks trial
counsel for allegedly not presenting witnesses in
applicant's favor. I was not lead counsel in these
cases. These were Mr. Fortinberry's cases. He had
worked on them for some time. He and Applicant had
discussed their defensive theory. The trial decisions
were Mr. Fortinberry's to make. We did present
defensive witnesses. I am unaware of any witnesses that
would have been beneficial to Applicant which were not
presented. I do remember that not all the witnesses
testified the exact way Applicant expected them to.
Because I was not lead counsel and was brought in late
just as help in the jury trial, I will not respond
further to this ground, unless asked to by the court.

   8. **Ground of Relief Number Six** complains basically
of the lack of information of the venire panel
questionnaires and strikes made by trial counsel. The
forms filled out by the members of the venire were

returned to the court along with the strike sheets at the conclusion of voir dire. This is normal procedure in Tarrant County trials. While I have no independent recollection or notes of the strikes Mr. Fortinberry made, I do remember Applicant was present when our strikes were discussed. Applicant participated in these discussions and appeared to me to agree with the final decision made by Mr. Fortinberry.

Applicant also complains in Ground for Relief Number Six that trial counsel made no challenge to any of the state's challenges for cause and that no challenges for cause were made by defense counsel. First, the state's challenges were legitimate and an objection would have been inappropriate. Second, there were defensive challenges for cause.

The record is clear that the court addressed the challenges for cause which were obvious for the defense and the state. Defense, therefore, did not have to state them on the record. After individual voir dire of several members of the venire, the court stated it would address the agreed challenges for cause first. Both sides then agreed to four challenges for cause. These included defensive challenges.

The first venireperson to be individually questioned was number 13 who told the court he had applicant "appears to me to" fit the stereotype of a child molester and that he formed this opinion "five seconds into the room." Number 16 was then questioned. She stated that having been a sexual assault victim, she would not be able to fairly decide the case due to her personal experiences and feelings. Number 37 was then examined. He stated that he had personal experience with someone who had been sexual assault victim and someone who had been falsely accused. He said, however, that this would not affect his ability to be fair in the trial of these cases. Number 42 was then examined about his having been falsely accused of sexual abuse and finally admitted his experience would affect his decision making process in these cases.

number 42 was a state challenge. If we had any
additional legitimate challenges for cause, we would
have made them.

. . .

10. Regarding my representation of Applicant
generally, as stated above, I was brought into these
cases for the sole purpose of aiding Mr. Fortinberry in
trial. We all know it is best to have a second chair
when in trial if at all possible. From what I saw, Mr.
Fortinberry was fully prepared for the trial. He had
visited with witnesses, discussed the defensive theory
with Applicant, anticipated potential legal issues and
completed necessary legal research, had full access to
the state's file, and had a definite plan of attach. He
felt it would be best to have a female attorney cross
examine some of the female witnesses.

(SHR-01 at 129-32 (record citations omitted).)

Finally, appellate counsel Swanda responded to petitioner's

allegation against him as follows:

7. Ground of Relief Number Three attacks appellate
counsel for failing to file proper post-trial motions.
Specifically, relator complains about appellate
counsel's failure to file a "Designation of Record." A
"Designation of Record" refers to a request for the
Clerk's Record. A "Designation of Record" is not
necessary. Rule 34.5(a) [of the Texas Rules of
Appellate Procedure] provides what comes up
automatically in the Clerk's Record in the absence of a
"Designation of Record." Consequently, a failure to
file a "Designation of Record" is not a deficiency. To
the extent appellate counsel determines anything
necessary is missing, appellate counsel can request a
Supplemental Clerk's Record by letter. Relator does not
complain about a failure to request a Supplemental
Clerk's Record, but from an appellate practitioner's
standpoint, that is the crux of relator's complaint.

8. Relator complains that the Clerk's Record should have included the juror strike lists and a record of the seated jurors' names, which relator asserts are vital to his IAC juror bias claim. The transcription of the voir dire, or at least a part of it, was part of the appellate record. Appellate counsel's notes show Volume 2 of the Reporter's Record was entitled "Jury Selection and Trial on the Merits." Appellate counsel's notes show relator did not object to any of the State's challenges for cause. Appellate counsel's notes do not show that relator's trial counsel asserted any challenges for cause. Appellate's counsel's notes do not show whether there were any objections to the jurors' being sworn in. Had there been any objections to the jury being sworn in, appellate counsel is confident he would have made a note to that effect. In short, in the absence of a dispute over the jury composition, appellate counsel had no basis for reviewing the names of the seated jurors or for reviewing the juror strike lists. Appellate counsel needed objections and rulings to preserve a complaint for appellate review. To the extent relator wants to complain about trial counsel's handling of the voir dire or the jury selection, those issues are best raised in a habeas corpus proceeding where trial counsel is given an opportunity to explain what he did and why he did it.

9. A "Request for the Reporter's Record" is found under rule 34.6(b)(1) [of the Texas Rules of Appellate Procedure]. Relator acknowledges appellate counsel filed a "Request for the Reporter's Record" on June 11, 2009. Appellate counsel's requests for the reporter's record, which should be in the Clerk's Record, should include a request for all the notes from the voir dire.

10. Juror information is placed under seal. In the absence of any trial complaints as to the composition of the jury, appellate counsel did not have a basis for attempting to unseal the records of the venire. To the extent relator wants to review these sealed records in conjunction with his IAC claim within this habeas proceeding, appellate counsel's understanding is

relator could still request the Court to unseal them so he can review them, but first he would have to make a showing of good cause.

(SHR-01 at 56-58 (citations omitted).)

The state habeas court found counsel's affidavits credible and supported by the record, and entered findings, too numerous to list here, consistent with the affidavits. (*Id.* at 138-44.) Based on those findings, and applying the *Strickland* standard, the court concluded that petitioner failed to prove that counsel's conduct fell below an objective standard of reasonableness or show a reasonable probability that, but for counsel's acts or omissions, the result of his trial or appeal would have been different. (*Id.* at 145-50.) The Texas Court of Criminal Appeals, however, did not adopt the findings in denying petitioner's state habeas applications. As noted, *supra* note 4, under these circumstances, this court presumes the Texas Court of Criminal Appeals applied the *Strickland* standard and made factual findings consistent with its decision.

Deferring to the state court's implied findings, and having independently reviewed petitioner's claims in conjunction with the state court records, the state court's application of *Strickland* was not unreasonable. Petitioner's claims against trial counsel are conclusory, with no legal and/or evidentiary

basis, refuted by the record, involve state evidentiary rulings or other matters of state law, or involve strategic and tactical decisions made by counsel, all of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *United States v. Green,* 882 F.2d 999, 1003 (5th Cir.1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (ineffective assistance claims "based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified is too uncertain").

The state court's rejection of petitioner's claim against

appellate counsel is also reasonable. State law, apparently, requires the county clerk to automatically prepare and file a record containing copies of those items listed in rule 34.5(a) of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 34.5(a). The rule also provides that any party may request additional items be included before the record is prepared. *Id.* 34.5(b). Counsel explained that, having reviewed the record, he did not request inclusion of the juror strike lists and the seated jurors' names because his notes did not show whether there were any objections to the jurors being sworn in and, in the absence of a dispute over the jury composition, he had no basis for reviewing the juror strike lists and the names of the seated jurors. It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). Appellate counsel is not ineffective for failing to raise an issue that was not preserved for appellate review in the trial court and, thus, could not have resulted in any change in the outcome of the appeal. Counsel is not required to raise futile or frivolous claims or arguments. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994).

In summary, the record supports the state courts' denial of

22

the claims presented in this federal habeas proceeding. The state courts' adjudication of the claims is not contrary to or involve an unreasonable application of *Strickland* in light of the record as a whole. Accordingly, it is entitled to deference and the presumption of correctness.

For the reasons discussed herein,

The court ORDERS that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as Petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED October 25, 2016.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE